here. The last case on the count, Lieber Realty. Good morning, your honors. My name is Peter Pastor. I'm with the firm of McNamee Lochner, and we represent Trustco Bank, the appellant in this case here before you today. Trustco Bank was the tenant of a commercial property owned by the plaintiff, Lieber Realty, in Nyack, New York. And over the course, starting in 2004 through 2024, was the original term of the lease. Over the course of time from January of 2012 to December of 2016, the property suffered sewage problems, backups, all kinds of issues, which became more increasingly difficult for the bank. The court below found that these were not brought to the I think there's issues of fact on that, Justice Parker, but I don't think it's really necessary to resolve that issue. And the reason is that it came a time in December of 2016 when their attempts to correct the problem with the backups and the sewage became very, very difficult. And then they were informed that there was mold in the building. And based upon the mold report they decided for the benefit, the health of their employees and their customers to exercise their right of constructive eviction. And the reason that's critical... Where under the lease did you have such a right? Under section 227 of the New York property law, a tenant has the absolute right when a property becomes uninhabitable to exercise a right of constructive eviction. Didn't you agree to different remedies in the lease? Pardon me? Didn't you agree... No, no, article... No, the Lieber Realty would argue that article 16 of the lease involving casualty and insurance created a waiver of Trusco Bank's right to exercise its constructive eviction under New York property 227. If I understand correctly, you're conceding you didn't give notice required by the lease and therefore you are relying on the theory of constructive eviction relieving you of those obligations. Judge Cote, not exactly true, but I can tell you that the landlord in a... If we had a plenary trial on this where parties were actually able to submit witnesses and testimony, I think you would find that the landlord was well aware of the sewage problem. Okay. But having said that, I don't think the notice is even relevant until the decision to implement the constructive eviction in December, December of 2016, they gave the notice in March. There was a complete written March of 2017 that it was unequivocally we have a duty to our Federal regulators, we have a duty to our customers, we cannot continue to operate this uninhabitable business. And that's the notice that was given, and I think that was based on its constructive eviction. Up until that point, they... I'm sorry. Do you agree or do you not agree that Trusco never gave written notice of the purportedly hazardous condition? I believe we gave it in March of 2017, Your Honor. Is that the first time you gave... The written notice. Correct. Correct. But I don't think that's fatal to their rights under the 227 of the real property law. And here's really where Judge Karras erred, in my opinion, in our opinion. There's four corners of a lease, the ceiling, the roof, the base, the slab, and every piece of evidence before Judge Karras on summary judgment indicated that the fault, the problem, was in the lateral that went from the lease to the main sewer line. Now, tenants can't affect the sewer line or a lateral. A municipality will only deal with the owner. The owner agrees, Lieber agrees, that external matters are the landlord's prerogative and only the landlord's. And I will point to you in the brief by the appellee, page 7, he admits several of these service calls required work to be done on a portion of the sewer line on the exterior of the premises. So if you follow my line of thinking here, there's an admission that the defect is in the exterior. There's no requirement that we have to give notice to keep the property perfect and well. That's the responsibility of the landlord. Judge Karras found that in section 16.01 of the lease, you waive your 227 rights. And that's where we disagree, Your Honor. We do not believe that that section removed. That is not a knowing, express waiver under New York State law. We believe that if you look at the cases that we cite, the cases that are before this court, it has to be expressed and it has to be in writing and it has to be acknowledged. That was never the case. Those two provisions are perfectly harmonious. It was certainly in writing and acknowledged, right? Right. Yes. And I don't believe that was there at all. Now... I'm sorry? What wasn't there? There was never an express waiver by Trusco. Section 16 does not provide an express waiver of New York State law under 227 of real property law. Now, let me just point out a couple other things. That's on the motion why we believe he erred. There were issues of fact. There should not have been. I'm still struggling to understand. On A86, environmental concerns, it says, tenants shall immediately notify landlord in writing. Right. And we... Well, you did it... March of... That's when we were told... When I'm asking a question, please, just wait. You did not give any notice until March of 2017. Is that right? On the mold issue. Correct. There were issues about... Any issues? No, they... Written, they did not give written. There were phone calls. Can't both talk at the same time. And when I am asking a question, I'd rather you wait. You want to answer my question, right? Are you agreeing that there was no written notice of any defect given prior to March of 2017? Correct. Okay. Are you saying that the real propping law 227 obviates the need to give written notice? No. We gave the written notice in March of 2017. That was the notice. It was quite clear. It pointed to our duty to regulators under federal law. It pointed to the duties under the OSHA complaint that we received. In March... Why is that notice timely if it's not given in March of 2017? Because in January is when we received the information from CERFPRO and EnviroCheck that this was not just a sewage backup issue. This was a mold issue. You had deleterious elements in your building. They could not afford to continue to operate that business beyond that date. Up until that point, TRESCO unwittingly, and for whatever reason, I wasn't trial counsel, for whatever reason, they were trying to correct an error in an exterior defect. It wasn't their problem. It was the landlord's problem. The landlord never corrected it. They tried. They operate 135 branches all over New York and Florida. They never have a problem with landlords. They are working really hard to stay in the branch. They couldn't afford to stay in the branch. And the Leonard Affidavit by the AVP put forward to Judge Harris the reason that they couldn't stop and just vacate for 60 days or 90 days. They had to have a continuous operation of their bank branch. Now, one last point. I've got 15 seconds, I guess. No, that means you're over, but go ahead. Oh, I'm sorry. You're over, but go ahead and make your last point. On the judgment, the post-judgment interest, counsel would have this court believe that there was an attorney error that we didn't bring to the court's attention, the proposed judgment that required the 2.4% federal rate of interest post-judgment. And that is completely erroneous. When this judgment was first, when the first opinion and order of Judge Harris was rendered in June of 2018 and before a proposed judgment and before our motion for a 60B motion, we pointed out to the court that the contract rate of interest does not govern in federal law post-judgment. And that was brought to the court's attention. Then the 60B motion made, then the 60B motion was denied, and then the proposed judgment was submitted. And counsel, myself, informed the court, we have no problem with the contract rate of interest up to judgment date. And then for whatever reason, Judge Harris continued, put in the judgment that post-judgment interest would be at 8%. It was clearly wrong. We found that out three or four days after the judgment was entered. We made a motion. We made a letter. The judge said, fine. We were running up against our- Fixed it. He fixed it. He fixed it. But I just want you to know that everybody was aware what the law was. It was just an error. And then we filed our notice of appeal. We didn't mean to divest them of jurisdiction to correct the error, but just so- I think under federal rule of appellate procedure 4, you didn't divest the court of jurisdiction in any event. So we'll hear from the other side. Thank you. Morning, Your Honors. Michael Freeman, Greenberg Freeman, LLP for the Appalachians. I want to address first the constructive eviction point. Judge Harris found three granted. Constructive eviction is an affirmative defense, which means that the appellate has the burden of proof. So if the court affirms on any one of the three grounds, that affirmance of the liability portion of the decision is warranted. So the first ground was the failure to find an obligation that the landlord had to do the repair. There was no evidence in the record that it was a structural repair. There was no evidence in the record that there was an exterior issue that caused the problem. All my adversary speaks about is speculation. It is certainly possible, and there is evidence in the record, that when plumbers went to the premises earlier, they found rags and tampons that were stuck in the sewer system. Certainly if that were to occur, that is not the landlord's obligation. That is not a structural repair. That is not an obligation. We don't know because the appellant didn't put on any evidence as to what the cause of the circumstances were. We're just looking at the fact that there was a flood. The lack of any evidence, which is what Judge Harris cited, is dispositive on that issue. On the question of notice, and the court asked the right questions with respect to notice, my adversary said that issue did not need to be resolved today. But that's not true, because notice in this case was clearly insufficient. It's not enough that they gave written notice. They had to give notice and allow the landlord sufficient time to correct the problem before they could claim constructive eviction. The landlord received written notice for the first time on March 28th, and they abandoned the premises on or before March 31st. So three days. I think as a matter of law, this court could conclude, as Judge Harris did, that that was an insufficient notice. In other words, the March notice didn't say, here's a problem. Fix it. The March notice said, we're walking away. Here's a problem. We're leaving in three days. Have a nice life. Yes, Your Honor. Exactly. And then the third independent reason that the judge found was waiver through the lease, and Judge Parker touched on that point. We believe that there was a clear and expressed waiver in the lease of the tenant's right to claim constructive eviction. I'd like to move now to, if the court doesn't have any more questions with respect to the appeal, I'd like to move to the issues raised on my cross appeal. The first one is the damages associated with the five-year extension. The threshold issue in that case is whether the stipulated state court settlement, which was placed on the record before the judge in the state court action, was ambiguous. Judge Remand, on that, for further fact-finding? We don't believe there's any fact-finding in terms of an assessment of damages. The damages, if Your Honor looks at the record, we had already submitted a full expert report on what the damages would have been, including the five-year extension. And when Judge Harris denied that piece of our summary judgment, we had to submit a new expert report on the damages. So we don't believe that there is any issue, because it's an interpretation of law. But you argue that the settlement placed on the record creates an ambiguity that needs to be construed. Correct. But we also argue that we filled the, we demonstrated the party's intent through the declaration of the lawyer who represented Lever in the state court action. And the lawyer in this state court action explained that the party's intent was not to exercise the option, which is the words that he used, unfortunately, but to extend the term, the initial term of the lease by five years, using the rents that were set forth in the option. And as we explain in our papers, the ambiguity arises from the fact that at the time the lawyer said execute, or exercise the option, the right to exercise the option did not exist. And Judge Harris? The lease, the lease refers to the stated lease term as a 20-year term. Correct. And then for any extension, that's referred to as an option term. Correct, Your Honor. I mean, and if you give the words their, their, their, their, their meaning, I don't see where the error was in saying that the additional five years was not included. And Your Honor, the error was the fact that, let me take a step back. We're dealing with stipulated settlements on the record in open court. There is a whole line of cases in New York, and we've cited some of them at pages 48 and 49 of our opening brief. I talk about, it's, you're not just limited to, courts are not just limited to the words spoken on the record in terms of what the parties intended. The court is allowed to evaluate the record as a whole. And here, we believe if you just focus on the words, there is ambiguity because the option, the right to exercise the option did not exist. And here we have two lawyers, and it's even stated on the record at page 165 of the appendix, that the lawyer, while he's speaking the settlement onto the record, he didn't write it down. So this was something that was done in a back room in the midst of a trial. And I would submit to the court that had this been a written settlement agreement, the parties would have gone back, they would have analyzed the lease, they would have said, this clause is deleted, and we're modifying it to state what the language of the settlement should be. But because they did it in more of an informal way, although it is enforceable, there is still some ambiguity there because they used language that is inconsistent with the language of the lease. And the particular thing, the particular statements that they made were that we are going, TRUSCO is going to exercise the option, but TRUSCO did not have the right to exercise the option because it did not exist. And that's the nature of the ambiguity. And that's why the Sarkeesian Declaration, which is the lawyer from the state court action, should be used to fill in, to demonstrate that the parties did not intend simply to exercise the option, but to extend the initial term of the lease from 20 to 25 years. And if you look at the global settlement as a whole, there were a number of things at play here. There was no indication in the record that any of this was intended to be conditional. There was current claims that were settled, TRUSCO got a rent credit, and my client received a deferred payment, and the deferred payment was in the form of the lease term instead of 20 years is going to be 25 years. So this option language in the contract, I think it's section 304 of the contract, gives the tenant a benefit. They have a right to extend the lease at their option, but they lose that benefit if, for instance, they're in default at some point. Correct, Your Honor, but I would say in this case, they lost the benefit by entering into a settlement. Instead of waiting 20 years to determine what the market conditions were, to determine if the option rental rates were reasonable for the market at that time, the settlement was you have to exercise that now. And the exercise of it now did not just exercise the option, but extend it, which is what the lawyer said in his declaration. It was and in place of that, we are putting an extension of the initial 20-year term, making that now 25-year term. If I can turn in my last two minutes, unless the court has any more questions on that subject, I'd like to turn quickly to Rule 60B, the vacature, the amended judgment. I think the easy question for the court is whether the court was, whether the district court was ousted of jurisdiction upon the filing of a notice of appeal. I believe Tolliver makes that issue very clear, that the district court. Maybe I'm misreading it, but I believe that Rule, Appellate Procedure Rule 4A contemplates that when there is a judgment, and then a Rule 60B motion, that the court is not divested of jurisdiction. To challenge the eventual order, there has to be an amended notice of appeal, and that was done What I would say is there were two procedures. One, in Rule 4A, it says that if there is a Rule 60B motion pending, don't file a notice of appeal, and you can wait to file the notice of appeal until 30 days after the judge rules on the 60B notice. This way, the judge still has jurisdiction. What's the correct amount of interest? The law provides for the federal rate, and we concede that, Your Honor, but we believe that that is the inappropriate lens to view this issue. Let's say you're right. We would send it back down, and then what? And then the district court is going to put in the correct number. We would like the court to rule here, and that's what we've asked for in our brief, that the judge erred. The judge abused his discretion in granting the relief in the first place in the context of the facts of this case, and I'll explain why. This court has issued many decisions which talk about the importance of 60B relief is only available in extraordinary situations. Here we have a situation where the facts of the case were never disputed. Summary judgment was entered in June 2018. In July 2018, counsel comes in, files their first 60B motion based on arguments that were never advanced in summary judgment. We then have to wait another nine months for the judge to decide that issue. We then have to wait for the judge to enter the final judgment, and then Trusco says, well, we left something else out. We left out the fact that we failed to make this. So what specifically is it you want us to do? We would like the court to rule that the district judge abused his discretion in granting relief under Rule 60B because it was a mistake. It was a mistake of right. But we argued that we were entitled to it. Pardon me? The initial the the interest rate before it was changed was the incorrect? You can interest rate before it was changed was the contractual rate of interest, and had counsel raised that issue as part of its his objections to the proposed judgment, we believe that the district judge would have modified the interest rate to say it was the federal rate, but they didn't. Our argument is a waiver. It's a mistake. This is not a case where the court should excuse, the court below should have excused a mistake of counsel in failing to raise a proper objection. So you want price associated with this procedural error in the prices paying you several points more than correct. You can see that you were entitled. Does that seem just to you? Well, your honor, what I would say in response to that is essentially what I said just before is that is it just when you have a 93 year old man and a disabled daughter to drag the case out and continue to make arguments that were not raised on summary judgment. You know, we're talking about justice in this case. You know, justice delayed is justice tonight. This is a case that should have been resolved, you know, at least 18 months ago. And here we are in front of this court, which has my pleasure to be here today, but there is a delay to my client. Thank you. I guess we should be given credit for the delay because the 8% interest continued to accrue at a higher rate than the federal rate. If there was a, if there was a judgment, I don't think there's any question that the federal rate is 2.4. And even if we reported March notice, that's not really notice. I mean, it's, it's okay. Judge, I want to, I'll address that now. Well, I'm asking you right now. If you look at section March notice, doesn't give the landlord an opportunity to fix the condition. And I don't think the landlord is required to be given that notice under section 227 of the New York property law. It says if the destruction or injury occurred without his or her fault us or neglect, quit and surrender possession of lease, low premises of the land, so leased or occupied in he or she is not liable to pay the lessor or owner rent from the time subsequent to the surrender. There's no requirement or state law. 27 doesn't require notice even when the lease requires it? Well, we gave notice in March of 2017. That's my point. We gave them, we gave the notice and we uninhabitable. We were constructively evicted. And when you, when you superimpose on that, the banking regulations of how we couldn't even vacate the place to correct the mold, the remediation would have taken 60 to 90 days. There's no way we could have cut that branch open. And that's what the Leonard affidavit explained to the court, explained the OSHA consequences and explained the currency, the controller issues. So as far as, and also on that interest rate, we've appealed the original judgment. So the original judgment could be appealed and I don't see what the consequence is of the motion to resolve the order. So if you have any other questions? No, we don't. Thank you. Thank you. Well, that completes the calendar. I'll ask the